LAWRENCE L. AULDRIDGE and KATHERINE AULDRIDGE, Appellants, v. LEWIS SPRAGGIN and ALLENE SPRAGGIN.—163 S. W. (2d) 1042.

Division One, June 3, 1942.

Rehearing Denied, July 28, 1942.

*R. H. Davis* for appellants; *Will Spiva* of counsel.

*Emerson Foulke* for respondents.

DOUGLAS, P. J.—This is a suit to quiet title to the eastern 14 feet of lot 80 in Taylor's Second Addition to the City of Joplin. The parties are owners of adjoining lots. Plaintiffs own lot 79, which adjoins the 14-foot strip. Lot 79 is not involved in this suit. Defendants are the record owners of lot 80 which includes the strip in question. Both parties are claiming ownership of the strip.

Some years ago the then owners of lot 79 built a house partly on their lot and encroaching 14 feet over on lot 80. In subsequent conveyances the house and land have been described merely as lot 79 with no mention or attempt to include in the description the 14 feet of lot 80 on which the house encroached. Likewise lot 80 has been conveyed from time to time, described merely as lot 80 without any exclusion or exception of the strip in question.

The same strip was previously the subject of an action in ejectment. In 1939 the present defendants, as owners of lot 80, filed suit in ejectment against the plaintiffs' grantor, the then owner of lot 79 who was in possession of that lot and the 14-foot strip.

In that suit the circuit court found the defendants in this case, plaintiffs in that one, were entitled to the possession of the 14-foot strip and ordered possession delivered to them. No appeal was taken from that judgment. A writ of possession was issued and served on plaintiffs' grantor who then conveyed lot 79 to the plaintiffs in this action. Plaintiffs immediately went into possession of lot 79 and the 14-foot strip. They then filed this suit to quiet title to the strip. In this suit the circuit court found against plaintiffs and in favor of defendants on their cross bill and decreed title to the strip in defendants. From this judgment plaintiffs appealed.

In their petition plaintiffs claim ownership of the strip by adverse possession arising from a parol gift of the strip to one of plaintiffs' predecessors in title. Defendants plead the judgment rendered in their favor in the ejectment action, and base their claim to the strip on that judgment alone as res judicata of their title.

Plaintiffs first argue that such judgment is no bar to this action to quiet title.

■ It is now well established in this State that a judgment in the simple action of ejectment does not adjudicate title to real estate. Such a judgment adjudicates only whether the plaintiff in the ejectment action has the right of possession as distinguished from title. [See Sec. 1529, R. S. 1939.]

This is not the universal rule in this country. In a number of jurisdictions by statute or decision the action of ejectment has developed into the approved means of trying title as well as obtaining possession. [18 Am. Jur., Ejectment, sec. 4; 28 C. J. S., Ejectment, sec. 2.] Nor has the rule always been as firmly settled in Missouri as it is now. Its present status was finally reached after a long struggle, through confusion and disagreement.

The evolution of the action of ejectment presents an interesting history. It is sufficient for the purpose of understanding the development of the rule in this State to point out that in its primitive form the action was merely one of trespass to recover damages for the wrongful ejectment or ouster of one who had a term of years in land. Then the action was broadened into one for the recovery of the possession of the land as well as for damages. At the common law there was a separate form of action for the assertion of ownership of the freehold. Then through the employment of a series of ingenious legal fictions title to the freehold as distinguished from the right of possession only came to be indirectly determined in an ejectment action. [See Warvelle, Ejectment (1905).] However, this latter development did not become fixed in this State, although the territorial laws and later our State Statutes seemed to indicate a legislative intention to adopt this practice. By these laws and statutes the fictions were abolished and the plaintiff was required to state that he was legally entitled to the premises. The defendant was permitted to plead that he was not guilty of the ejectment or to plead his title. [1 Mo. Territorial Laws, 122, 1 Laws, 1825, 343.] The effect of the statutory law on the action of ejectment is discussed at great length in Kimmel v. Benna, 70 Mo. 52. There the court acknowledged that ejectment was often used to try title to real estate elsewhere. However, it interpreted and construed our statutes as not permitting such use and decided that a judgment in ejectment confers no title upon the party ■ in whose favor it is given. Accordingly, it held a judgment in ejectment is not a bar to another action for the same property between the same parties.

It is now the settled rule in this State that "actions in eject-ment, though between the same parties, having the same defenses, concerning the same title and possession, and in all respects similar in their facts, may be maintained ad infinitum." [Sutton v. Dameron, 100 Mo. 141, 13 S. W. 497.] In order to prevent the harassment of successive actions in ejectment a bill of peace to quiet title was resorted to. [Primm v. Raboteau, 56 Mo. 407.] An exception was recognized where the ejectment action was converted into an equitable action and an issue as to title was injected and affirmative relief prayed for. Under such circumstances an adjudication of title became binding. [Crowl v. Crowl, 195 Mo. 338, 92 S. W. 890.]

In the face of many decisions holding ejectment in this State was a possessory action only there continued to be some stray decisions to the contrary so that the controversy whether the simple ejectment action could or could not adjudicate title persisted. Finally the issue was raised on the question of the jurisdiction of this court. Section 12 of Art. VI of our Constitution gives this court appellate jurisdiction of cases involving title to real estate. By a divided court in Division One, it was held that a judgment in a simple ejectment action did not adjudicate title. [Ballenger v. Windes, 338 Mo. 1039, 93 S. W. (2d) 882.] Later the question was finally settled by the court en banc in Gibbany v. Walker, 342 Mo. 156, 113 S. W. (2d) 792. That case recognized and approved the exception where an equitable defense is invoked and affirmative title relief asked for the judgment may properly adjudicate title. The right to invoke an equitable defense has been continued by the present statute on suits to determine and quiet title. [Sec. 1684, R. S. 1939.] This court held in Titus v. Development Company, 264 Mo. 229, 174 S. W. 432, that a defendant in an ejectment action had the right to invoke the provisions of said statute in order to determine the title and interests of the parties; in other words, to convert the ejectment action into an action to determine title. [cf. Hynds v. Hynds, 253 Mo. 20, 161 S. W. 812.] Under this statute it follows where defenses either legal or equitable are invoked and a title determination sought, the judgment or decree may adjudicate title.

Turning now to the ejectment action on which defendants rely, we find that the judgment therein in favor of the defendants in the present case, and now asserted by them as a bar to this case, was one rendered in an ordinary simple action of ejectment in which no af-firmative relief or adjudication of title was sought. Under the law as it is now settled in this State, the judgment in that action could not adjudicate title and consequently is not res judicata and is no bar to this action.

Even though defendants' sole defense was based on that judgment, if the plaintiffs are to prevail in this action it must be on the strength of their own title, not because of the weakness of de-

fendants' title. [Brown v. Weare, 348 Mo. 135, 152 S. W. (2d) 649.]

Plaintiffs' petition asks equitable relief and both parties have treated this as a suit in equity. We shall treat it as such. [Rhodus v. Geatley, 347 Mo. 397, 147 S. W. (2d) 631.]

Plaintiffs rely on adverse possession commencing with a parol gift of the strip to their predecessors in title. The evidence shows that lot 79 was acquired in December, 1899, by one Bart Crockett. In 1901 Crockett and his brother built the house encroaching 14 feet on lot 80 as a home for their father and mother. Shortly after the house was built, a brother-in-law of Crockett acquired the adjoining lot 80 and lot 81. His name was Ohlhausen. Mrs. Ohlhausen testified that in 1902 or 1903 her father, who was living in the house in question, and her husband who owned lots 80 and 81 agreed on a boundary line close to her father's house and beyond the encroachment which included the 14-foot strip with lot 79. The father and Ohlhausen, the son-in-law, together built a fence along such line. The testimony showed that Ohlhausen did this with knowledge of the true boundary and the 14-foot encroachment. "Let him have all the land he needs," said Ohlhausen.

Considering all of plaintiffs' evidence we find it sufficient to establish a parol gift of the strip. Adverse possession commenced therewith and has continued for approximately 40 years at least. "The fact that one is put in possession under a ▇▇▇▇ parol gift is itself evidence of adverse possession." [Reader v. Williams (Mo.), 216 S. W. 738.] Possession under a parol gift is adverse and not permissive. [Coshow v. Otey (Mo.), 222 S. W. 804.] The facts in Rannels v. Rannels, 52 Mo. 108, are similar and the decision is apposite. That was an ejectment case in which the plaintiff was suing to obtain the possession of land which he had theretofore given to his sister. He had bought the land, taken a deed in fee to himself, had a house built for her and then made a verbal gift of the land to her and she went into possession and remained there. The court held that this constituted a complete transmutation of possession and that the sister's possession was adverse to that of the plaintiff from its very inception. The Statute of Limitations having run, the court held that plaintiff was not entitled to recover the property. This case was later approved in Allen v. Mansfield, 108 Mo. 343, 18 S. W. 901, where it was held that continuous adverse possession under a parol gift for the statutory period will not only constitute a perfect defense as against the donor and those claiming under him, but will confer title upon the donee.

It is claimed that the judgment in the ejectment suit giving possession of the strip to the defendants herein stopped the running of the Statute of Limitations. Such is the general rule in this State. [Matthews v. Citizens Bank of Senath, 329 Mo. 556, 46 S. W. (2d) 161.] However, at the time the judgment was entered, the Statute had

long since run and title had been established so that such rule is not now pertinent.

The fact that the strip was not expressly described in the deeds in plaintiffs' chain of title does not affect plaintiffs' claim of ownership. The rule appears to be where land adversely held is included in the same enclosure with land owned and conveyed by the grantor, the taking of possession by the grantee of the entire enclosed area creates a privity with the grantor as to the portion not conveyed. [1 Am. Jur., Adverse Possession, sec. 158.] Thus, the possession of such a grantor becomes tacked to that of his grantee.

In the case before us continuity of possession of the entire enclosed area has been maintained, and the other elements of adverse possession as announced in Welsh v. Brown, 339 Mo. 235, 96 S. W. (2d) 345, have been fully established.

The judgment entered should be reversed and the cause remanded with directions to enter judgment as prayed in plaintiffs' petition. All concur.